IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| DONNA PURCELL and SHAWN PURCELL, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 11-7004 |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ROBERT F. KELLY, Sr. J.**                                                                            **FEBRUARY 10, 2012**

**MEMORANDUM**

Presently before the Court is a Motion to Dismiss Count Two and Count Three of Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant, State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant"), and the Answer to Defendant's Motion to Dismiss by Plaintiffs, Donna Purcell and Shawn Purcell (collectively, "Plaintiffs"). For the reasons set forth below, we will grant Defendant's Motion to Dismiss.

**I.    FACTS**

This case stems from Defendant's alleged bad faith handling of Underinsured Motorist ("UIM") claims by the Purcells. On August 28, 2007, Donna Purcell, who is insured by Defendant, was a guest passenger in a vehicle driven by Defendant's insured, Jack Christensen ("Christensen"), when they were involved in an accident with another vehicle driven by Defendant's insured, Brian Metz ("Metz"). (Compl. ¶ 8.) Donna Purcell sustained injuries in the accident. (Id. ¶ 9.) Plaintiffs claim that the motor vehicles operated by Christensen and Metz

were "underinsured."  (Id. ¶ 16.)

On September 14, 2010, Metz tendered his full liability policy benefits limits in the amount of $50,000 to Plaintiffs.  (Id. ¶ 15.)  Plaintiffs claim that they are entitled to underinsured motorist benefits based upon the following three State Farm automobile insurance policies: (1) one issued to Shawn and Donna Purcell (Policy No. 825 4218-A12-38J); (2) one policy issued to Shawn Purcell (Policy No. 110 5767-C 16-38); and (3) one policy issued to Christensen (Policy No. 094 0164-A25-38C), because Donna Purcell was a guest passenger in his vehicle at the time of the August 28, 2007 accident.  (Id. ¶¶ 6-8.)  Plaintiffs' two policies provide coverage for three vehicles with stacking benefits for a total available underinsured motorist benefit of $150,000.  (Id. ¶ 17.)  Christensen's policy provides a benefit of up to $100,000 for an underinsured motorist.  (Id.)

Defendant offered and paid $17,500 of underinsured motorist benefits to Plaintiffs without prejudice to their rights to establish their current claims.  (Id. ¶ 22.)  Plaintiffs are demanding the remainder of the underinsured motorist benefits.  (Id.)  On October 12, 2011, Plaintiffs filed a Complaint with the Court of Common Pleas of Chester County, Pennsylvania (No. 2011-09794-CT), asserting the following three counts against Defendant: (1) Count I - Breach of Contract; (2) Count II - Breach of Statute - Bad Faith (which includes claims of violations of the Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"), 75 Pa. Stat. § 201-1 et seq.); and (3) Count III - Breach of Statute - Bad Faith (alleging violations of the duty to act in good faith pursuant to 42 Pa. Cons. Stat. Ann. § 8731).  (Def.'s Not. Removal at 1, Ex. A (Compl.))  Plaintiffs seek compensatory damages for their breach of contract claim.  (Compl. ¶ 7.)  Regarding their allegations of bad faith, Plaintiffs seek punitive

damages, interest and attorney's fees. (Id. ¶ 40.) Plaintiffs seek treble damages for Defendant's alleged violations of the UTPCPL. (Id. ¶ 34.)

Defendant removed this case to this court on November 9, 2011. (Doc. No. 1.) The court has jurisdiction over this case based upon the diversity statute, 28 U.S.C. § 1332, because Plaintiffs are citizens of Pennsylvania, Defendant is an Illinois corporation with its principle place of business in Illinois, and the amount in controversy exceeds $75,000. (Not. Removal ¶¶ 4-9.) On November 15, 2011, Defendant filed the instant motion to dismiss Counts Two and Three of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Def.'s Mot. to Dismiss Count Two and Three of Pl.'s Compl.) Defendant did not move to dismiss Count One for Breach of Contract and, it, therefore, is a viable claim as the case now stands. (Id.) Plaintiffs filed their Answer to Defendant's Motion on December 5, 2011. (Pls.' Answer Def.'s Mot. Dismiss at 1.) Plaintiffs assert that Defendant's Motion should be dismissed as untimely. (Id. at 1.) They also argue that their claims are sufficient to survive dismissal, but, if not, request that they be permitted to amend their Complaint to comply with the Federal Rules of Civil Procedure. (Id. ¶ 13.)

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corporation v. Twombly, the Supreme Court of the United States stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).

Following Twombly, the United States Court of Appeals for the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

After Iqbal, a two-part analysis is required when a district court evaluates a motion to dismiss for failure to state claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). The Third Circuit has set forth this two-part analysis as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

Id. (citing Iqbal, 129 S. Ct. at 1949). After completing this analysis, if "'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not show[n] - that the pleader is entitled to relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950).

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III. DISCUSSION

#### A. Timeliness

Plaintiffs argue that Defendant's Motion to Dismiss should be dismissed as untimely pursuant to Federal Rule of Civil Procedure 12(a) because it was filed on November 15, 2011, more than 21 days after service of the complaint. (Pls.' Answer Def.'s Mot. Dismiss at 1.) In most cases, Federal Rule of Civil Procedure 12(a)(1)(A)(I) governs the time to serve a responsive pleading. See Fed. R. Civ. P. 12(a). It states in relevant part: "the time for serving a responsive pleading is within 21 days after being served with the summons and complaint." Id.

Plaintiffs mistakenly rely upon Rule 12(a). Since this action was removed from state court, Federal Rule of Civil Procedure 81(c) applies. Specifically, Rule 81(c)(2) provides that:

> **After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:**
>
> (A)  21 days after receiving - through service or otherwise - a copy of the initial pleading stating the claim for relief;
> (B)  21 days after being served with the summons for an initial pleading on file at the time of service; or
> (C)  **7 days after the notice of removal is filed**

Fed. R. Civ. P. 81(c)(2) (emphasis added). Pursuant to Rule 81(c)(2), Defendant had until November 16, 2011, or 7 days after the filing date of the Notice of Removal (November 9, 2011), to either file an answer or present other defenses or objections to the Complaint. Defendant's Motion to Dismiss was timely filed on November 15, 2011. Consequently, we reject Plaintiffs' argument that Defendant's Motion to Dismiss is untimely.

**B. Bad Faith**

Recovery for an insurance company's bad faith toward an insured is authorized by Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371.[1] It provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

In the insurance context, the term bad faith has acquired a particular meaning:

> *Insurance.* "Bad faith" on the part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citing Black's Law Dictionary 139 (6th ed. 1990)). Pursuant to Section 8371, a plaintiff must show that "(1) the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its reasonable basis." Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (relying upon Terletsky, 649 A.2d 680, recognizing that it established the test for Section 8371 causes of action). Plaintiff is required to support both elements of a bad

---

[1] The parties argue this case under Pennsylvania law. Pennsylvania's substantive law applies because we are sitting in diversity. See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).

**B. Bad Faith**

Recovery for an insurance company's bad faith toward an insured is authorized by Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371.[1] It provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

In the insurance context, the term bad faith has acquired a particular meaning:

> *Insurance.* "Bad faith" on the part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citing Black's Law Dictionary 139 (6th ed. 1990)). Pursuant to Section 8371, a plaintiff must show that "(1) the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its reasonable basis." Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (relying upon Terletsky, 649 A.2d 680, recognizing that it established the test for Section 8371 causes of action). Plaintiff is required to support both elements of a bad

---

[1] The parties argue this case under Pennsylvania law. Pennsylvania's substantive law applies because we are sitting in diversity. See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).

faith claim with clear and convincing evidence. Id. Under Pennsylvania law, a bad faith insurance practice can include an unreasonable delay in handling claims. Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001).

The broad language of Section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during, or after litigation. Bombar v. W. Am. Ins. Co., 932 A.2d 78, 92 (Pa. Super. 2007) (citing Hollock v. Erie Ins. Exch., 842 A.2d 409-415 (Pa. Super. Ct. 2004)). Therefore, an action for bad faith may also extend to an insurer's investigative practices. Id.

Plaintiffs argue that Defendant acted in bad faith during the overall handling of their UIM claim. Plaintiffs include general allegations of bad faith, but fail to make any specific allegations in support of their claim. Defendants argue that the bad faith claim must be dismissed because Plaintiffs do not make any factual averments supporting their claims other than "boilerplate assertions cut and pasted directly from the Unfair Insurance Practice Act (UIPA)."[2] (Def.'s Mem. Law Support Mot. to Dismiss at 5.) This, argues Defendant, is not enough to survive dismissal.

There is some conflict between the Pennsylvania state court and federal court regarding whether UIPA violations can support a bad faith claim under Section 8371. Plaintiffs assert that "with regard to the federal court position on the applicability of the UIPA in bad faith or consumer protection claims, the Pennsylvania Superior Court has determined that it is

---

[2]"The UIPA prohibits a person from engaging in an unfair method of competition or an unfair or deceptive act or practice in the insurance business." 3039 B St. Assoc., Inc. v. Lexington Ins. Co., 740 F. Supp. 2d 671, 677 (E.D. Pa. 2010) (citing 40 P.S. § 1171.1).

appropriate to consider the UIPA when evaluating an insurer's bad faith." (Pls.' Answer Def.'s Mot. to Dismiss at 3.) Notwithstanding the two-pronged test set forth in Terletsky, 649 A.2d 680, the Pennsylvania Superior Court has determined that the UIPA can be considered when evaluating an insurer's bad faith. See Brickman v. Grp., Ltd. v. CGU Ins. Co., 865 A.2d 918, 930 (Pa. Super. Ct. 2004); O'Donnell ex rel. Mitro v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999); Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1233 (Pa. Super. Ct. 1994). Notably, the Pennsylvania Supreme Court has not addressed the question of whether conduct that violates the UIPA qualifies as bad faith for purposes of a Section 8371 claim.

Plaintiffs are correct regarding the Pennsylvania Superior Court's allowance of UIPA claims within a bad faith claim. However, Plaintiffs fail to address how the federal courts in the Third Circuit have addressed the issue. Significantly, the Third Circuit and District Courts in the Third Circuit have taken the opposite approach of the Pennsylvania courts. That is, they do not recognize UIPA violations as per se bad faith. See Leach v. Northwestern Mut. Ins. Co., 262 Fed. Appx. 455, 459 (3d Cir. 2008); UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 505–06 (3d Cir. 2004) (applying Terletsky and finding that the plaintiff cannot rest its bad faith claim on violations of the UIPA); Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co., 29 Fed. App'x 823, 827 (3d Cir. 2002) (finding that UIPA violations are irrelevant when evaluating claims under Section 8371); Watson v. Nationwide Mut. Ins. Co., No. 11-1762, 2011 WL 4894073, at *4 (E.D. Pa. Oct. 12, 2011) ("Since Terletsky, courts in the circuit have not followed the Superior Court and have refused to consider UIPA violations as evidence of bad faith."); Sadel v. Berkshire Life Ins. Co. of Am., No. 09-612, 2011 WL 292239, at *12 n.11 (E.D. Pa. Jan. 31, 2011) ("[T]he United States District Courts in Pennsylvania have held that references to

9

standards under UIPA are irrelevant in a bad faith action in Pennsylvania where the Pennsylvania Superior Court has established a definitive two prong test for determining bad faith in Terletsky v. Prudential Property and Casualty Insurance Co."); see also Moss Signs, Inc. v. State Auto. Mut. Ins. Co., No. 08-167, 2008 WL 892032, at *5 (W.D. Pa. Apr. 2, 2008) (concluding that while the "UIPA and [Unfair Claims Settlement Practices] provide the standard by which an insurer's actions should be measured, we find that any violations thereof are irrelevant in determining whether Defendant acted in bad faith under Pennsylvania law"); Oehlmann v. Metro. Life Ins. Co., 644 F. Supp. 2d 521, 529–30 (M.D. Pa. 2007) (analyzing whether a UIPA violation constitutes bad faith per se concluding that it does not).

In the absence of a ruling on this issue by the Pennsylvania Supreme Court, and in light of the rulings by the United States Court of Appeals for the Third Circuit, including the District Courts within this Circuit, we conclude that insofar as Plaintiffs' claim for bad faith is based upon alleged violations of the UIPA, it fails as a matter of law. Therefore, we grant Defendant's Motion and dismiss Plaintiffs' claim under Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371 (Count Three). Count Three of Plaintiffs' Complaint is dismissed without prejudice to allow them the opportunity to amend their Complaint should they chose to do so. See Phillips, 515 F.3d at 245 (stating that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile").

**C. Unfair Trade Practices and Consumer Protection Law**

Plaintiffs assert that Defendant acted in violation of the UTPCPL, 73 P.S. § 201-9.2, in its

handling of their underinsured motorist claims.³ (Compl. ¶¶ 32-34.) The Pennsylvania "UTPCPL is designed to protect the public from fraud and deceptive business practices."⁴ Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008) (citing Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 605 A.2d 373, 375 (Pa. 1992)). "The statute provides a private right of action for '[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property' on account of the seller's unfair or deceptive acts or practices." Id. (quoting 73 P.S. § 201-9.2(a)). It is important to emphasize that "'[i]n Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable.'" Id. (quoting Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995)); see also Gordon v. Pa. Blue Shield, 548 A.2d 600, 604 (Pa. Super. Ct. 1988). Thus, "[n]onfeasance alone is not sufficient to raise a claim pursuant to the Unfair Trade Practices and Consumer Protection Law." Gordon, 548 A.2d at 604.

---

³Plaintiffs' UTPCPL claim is made in "Count Two: Breach of Statute - Bad Faith." (Compl. ¶¶ 24-34.) Confusingly, Plaintiffs' Count Three has the same title. (Id. ¶¶ 35-40.) Adding to the confusion, both Counts rely upon Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371, and are substantially similar regarding this statute. (Compl. ¶¶ 24-40.) Therefore, we address Count Two as it pertains to allegations under UTPCPL having already handled Plaintiffs' claims under 42 Pa. C.S.A. § 8371.

⁴The UTPCPL forbids, in part, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3. "Unfair methods of competition" and "unfair or deceptive trade practices" are defined under the act as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Id. § 201-2(4)(xxi).

.       In this case, Plaintiffs generalized, boiler-plate allegations of Defendant allegedly engaging in "unfair methods of competition and/or deceptive acts or practices" and engaging "in improper conduct which has created a likelihood of confusion or of misunderstanding" simply do not sufficiently allege the malfeasance necessary to state a claim under the UTPCPL.  As the Complaint currently stands, these allegations, including the facts contained within the Complaint, simply do not support an actionable claim under the UTPCPL.

As a result, Defendant's Motion to Dismiss regarding Count Two is granted; however, Plaintiffs are granted leave to amend the Count.  See Phillips, 515 F.3d at 245 (holding that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile").

An appropriate Order follows.